Filed 8/1/23 Zorikova v. Pease CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALLA ZORIKOVA, | |
| Plaintiff and Respondent, | G061152 |
| v. | (Super. Ct. No. 37-2020-00036459) |
| BRYAN PEASE, | ORDER MODIFYING OPINION AND DENIAL OF PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

It is ordered the opinion filed herein on July 7, 2023, be modified as follows:

On page 12, beginning at the third sentence of first full paragraph, the following is deleted:

In response to defendant's statement plaintiff ran an "illegal aggressive [dog bite] business" or abused the animals, plaintiff provided evidence of a report from animal control. The report included notes from animal control officers who visited plaintiff's property in August 2020. Among other things, the notes indicated the dogs "had shade and shelter" and appeared to be "healthy," "normal," and not "in distress."

And the following is inserted in its place:

In response to defendant's statement plaintiff ran an "illegal aggressive [dog bite] business" or abused the animals, plaintiff presented her declaration that she did not run an unpermitted or illegal business. Instead, her declaration states she trained personal protection dogs and that "personal protection dog businesses" are legal and used by law enforcement and others for safety and protection. She further stated there were no dead carcasses of dogs or animals on her property and that her dogs were in good health with ample and proper shelter.

There is no change in the judgment.

The petition for rehearing is DENIED.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALLA ZORIKOVA, | |
| Plaintiff and Respondent, | G061152 |
| v. | (Super. Ct. No. 37-2020-00036459) |
| BRYAN PEASE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Pease Law and Bryan Pease; Law Offices of Casey Gish and Casey Gish; Law Offices of G. David Tenenbaum and G. David Tenenbaum, for Defendant and Appellant.

Alla Zorikova, in pro. per., for Plaintiff and Respondent.

\*        \*        \*

In this first of two related appeals, defendant Bryan Pease, an attorney, appeals from the trial court's order denying in part his special motion to strike (anti-SLAPP motion) under Code of Civil Procedure section 425.16.[1] The court found plaintiff Alla Zorikova's claims against defendant arose out of protected activity and plaintiff demonstrated a probability of prevailing on her defamation and libel claims. But the court held she did not demonstrate a probability of prevailing on her claims for invasion of privacy or tortious interference with business relations.

On appeal, defendant contends plaintiff cannot demonstrate a probability of prevailing on her defamation and libel claims. According to defendant, his statements about plaintiff and her business were either privileged or true. For the reasons below, we agree some of defendant's statements were privileged or true. But plaintiff showed her claims had minimal merit to the extent they were based on defendant's statements she illegally occupied certain land and ran an illegal business. We accordingly affirm the trial court's order in part and reverse it in part, and we remand with instructions to strike certain allegations as detailed below.

FACTS

*The Complaint*

In October 2020, plaintiff filed the operative complaint against defendant alleging four causes of action: (1) defamation; (2) libel; (3) invasion of privacy; and (4) tortious interference with business relations. The complaint generally alleges defendant made various false statements about plaintiff as a breeder and seller of German Shepherd dogs. The alleged statements were made to law enforcement or posted online.

With respect to defendant's statements to law enforcement, the complaint alleges defendant called the San Bernardino County Sheriff's Department on August 8,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

2

2020 and made false reports about plaintiff. This included false reports that plaintiff was "illegally occupying [Bureau of Land Management] land, that [there were] more than 100 dogs on the property without shelter, nor food, nor water, that dead carcasses of German Shepherds are on the surface of that property all over and in the hundreds of those carcasses." The police then arrested plaintiff and her daughter. When plaintiff was released from jail, she learned some of her dogs were taken to an animal shelter while others were taken by an animal rescue group to Las Vegas, Nevada. She picked up the dogs from the animal shelter but was unable to track down the other dogs taken by the animal rescue group.

On October 5, 2020, defendant allegedly called the San Bernardino County Land Use Services Code Enforcement Division and falsely reported "that [p]laintiff lives on BLM land, does not own the Property, has dogs on the Property without shelter, nor food nor water and runs illegal aggressive [dog bite] business." The complaint alleges a code enforcement officer found no violation and indicated he would close the case against plaintiff after her "submitted application for kennel" was approved. A few days later, defendant "made . . . false allegations" to animal control about plaintiff and her dogs. After animal control arrived on plaintiff's property, they found no issues and left. Finally, the complaint generally alleges defendant "disseminated this defamation" to the Los Angeles County Department of Consumer Affairs and the Los Angeles City Attorney.

With respect to defendant's statements online, the complaint alleges defendant made various false statements on his personal Web site, Facebook, and Twitter. This included false statements that plaintiff "is squatting on [the] land and doesn't own the land," "runs [an] illegal aggressive [dog bite] business," "keeps the [d]ogs under straight sun," and "was arrested on Animal Cruelty Charges." The complaint further alleges defendant falsely stated plaintiff's dogs "are in horrible condition," her "business has been ordered 'to shut down,'" and a "Notice of Violation

3

WAS issued on October 13 of 2020 . . . by San Bernardino County [Land Use Services] Code Enforcement . . . ." Finally, the complaint alleges defendant posted a photograph of plaintiff online that "displays [p]laintiff not in real normal appearance" along with an image of plaintiff's private property.[2]

*The Anti-SLAPP Motion*

In December 2020 and May 2021, defendant filed an anti-SLAPP motion and a later amended motion. He argued plaintiff's claims arose from protected activity because the challenged statements: (1) related to matters under judicial review in pending cases where defendant was counsel of record; (2) were connected to matters under investigation by the San Bernardino County Sheriff's Department; or (3) were made in a public forum in connection with a matter of public interest. (§ 425.16, subd. (e)(2)-(3).) Defendant also argued plaintiff could not show a probability of success on the merits.

The trial court granted in part and denied in part the anti-SLAPP motion. First, the court held defendant demonstrated plaintiff's claims arose from protected activity pursuant to section 425.16 subdivisions (e)(2) and (e)(3). The court briefly noted plaintiff did not "specifically address either of these subsections, apparently conceding that they apply." The court concluded, "This is enough to find that the defendant satisfied his burden on the first prong." The court added, "It is also clear that statements, such as the ones in question, would be within the ambit of the statute."

Second, the trial court found plaintiff demonstrated a probability of prevailing on her defamation and libel claims but not her claims for invasion of privacy and tortious interference with business relations. With respect to the former, the court noted the complaint alleged defendant made various statements about plaintiff's

_____

[2] It appears the complaint attached defendant's online posts, but the complaint's attachments are not included in the record on appeal.

4

treatment of German Shepherd dogs and questioned her ownership of the property. While defendant argued his statements were true, the court held that "the mere fact that there are pending cases and/or investigations being conducted against plaintiff does not necessarily prove she has abused any animals." Because plaintiff had "not been convicted of anything" to date and "present[ed] evidence of her treatment of her dogs and ownership of the property," the court denied the anti-SLAPP motion as to the defamation and libel causes of action.[3]

## DISCUSSION

*Applicable Law and Standard of Review*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.)

The trial court conducts a potentially two-step inquiry to evaluate an anti-SLAPP motion. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) First, the court must decide whether the defendant has met its burden of establishing the plaintiff's claim *arises from* protected activity in which the defendant has engaged. (*Ibid.*) Second, assuming defendant has met its burden, the court determines

---

[3] Plaintiff disputes the court's ruling granting the anti-SLAPP motion as to the claims for invasion of privacy and tortious interference with business relations in a related appeal. (*Zorikova v. Pease* (July 7, 2023, G0601154) [nonpub.opn.].) We accordingly do not address those causes of action in this appeal.

whether the plaintiff has established "there is a probability . . . the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In meeting this burden, "the plaintiff must show the claim has 'at least "minimal merit."'" (*Bonni*, at p. 1009.)

We review the trial court's ruling de novo, applying the legal principles discussed above. (*Falcon Brands, Inc. v. Mousavi & Lee, LLP* (2022) 74 Cal.App.5th 506, 518.)

*Protected Activity*

In determining whether plaintiff's claims arise from protected activity, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)

If a plaintiff pleads mixed causes of action based on allegations of both protected and unprotected activity, "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether [the] entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit." (*Bonni, supra*, 11 Cal.5th at p. 1010.) Instead, courts analyze each act supplying a basis for relief to determine whether the acts are protected. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393, 395 (*Baral*).) "So long as a 'court determines that relief is sought based on allegations arising from activity protected by the

6

statute, the second step is reached' with respect to these claims." (*Bonni*, at p. 1010.) But "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, at p. 394.)

The anti-SLAPP statute identifies four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)-(4).)

Relying on the second and third categories, defendant contends plaintiff's defamation and libel claims arise from protected activity. (§ 425.16, subd. (e)(2)-(3).) He argues these two causes of action are based on what he said on matters of public interest or on statements connected to matters under official review. We agree.

Here, the complaint alleges defendant made various false statements about plaintiff on his personal Web site, Facebook, and Twitter. "Web sites accessible to the public, . . . are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366 (*Wong*).) Plaintiff suggests defendant's personal Web site does not qualify as a public forum because it does not allow for public comment or participation. But whether the Web site is privately controlled is irrelevant. As plaintiff's complaint acknowledges, the website was accessible to the public and viewed by third parties. In short, defendant's Web site, Facebook, and Twitter were public forums for purposes of the anti-SLAPP statute. (*Cross v. Facebook, Inc.* (2017) 14 Cal.App.5th 190, 199 ["'[It] cannot

7

be disputed that Facebook's Web site and the Facebook pages at issue are "public forums," as they are accessible to anyone who consents to Facebook's Terms.'"]; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 [postings on Facebook page and Instagram account were made in a public forum].)

We also find defendant's online statements were of public interest. (§ 425.16, subd. (e)(3).) "[A]lthough 'not every Web site post involves a public issue' [citation], consumer information that . . . implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Wong*, *supra*, 189 Cal.App.4th at p. 1366.) Courts have found that consumer protection information such as a warning not to use someone's services is a matter of public interest. (*Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146; *Wong,* at pp. 1365-1367.) We similarly conclude online statements about plaintiff, her allegedly illegal business, and her purported animal cruelty implicate matters of public concern. The statements were not made to simply air a private dispute but to warn the public about plaintiff's business.

The complaint also challenges various oral statements defendant made to law enforcement or similar authorities, including the San Bernardino County Sheriff's Department, the San Bernardino County Land Use Services Code Enforcement Division, the Los Angeles County Department of Consumer Affairs, the Los Angeles City Attorney, and animal control. These statements arose from protected activity. (§ 425.16, subd. (e)(2); see *Chabak v. Monroy* (2007) 154 Cal.App.4th 1502, 1511 ["statements to the police clearly arose from protected activity"]; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941 ["communications to the police are within SLAPP"]; *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1186, disapproved on other grounds in *Baral*, *supra*, 1 Cal.5th 376 ["Reports to governmental agencies intended to prompt an investigation constitute activity in furtherance of the right of free speech or petition"]; *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1258 [complaint to the City

8

of Santa Monica about a neighbor's playhouse and e-mail to City's director of planning were protected].)

Because defendant met his burden of showing plaintiff's defamation and libel claims arose from protected activity, the burden shifted to plaintiff to establish a probability of prevailing on the claims.

*Probability of Success on the Merits*

Our Supreme Court has described the second step of the anti-SLAPP analysis "as a 'summary-judgment-like procedure.' [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Baral*, *supra*, 1 Cal.5th at pp. 384-385, fn. omitted.)

Defamation can involve either libel or slander. (Civ. Code, § 44.) Libel is defamation if based on a "publication by writing" or "other fixed representation" that can be seen. (*Id.*, § 45.) To establish a prima facie case for defamation, a plaintiff must show "'(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) "Publication occurs when a defamatory statement is made to at least one third person." (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 884.) Because "'"[t]he sine qua non of recovery for defamation . . . is the existence of a falsehood,"'" truth is an absolute defense to a defamation action. (*Ibid.*)

As discussed, *ante*, there are two categories of statements alleged in the complaint: (1) defendant's communications with law enforcement or similar authorities, and (2) defendant's online statements. The former category of statements is privileged

9

and not actionable as defamation.  But plaintiff has demonstrated a probability of prevailing on some of defendant's online statements.

### A.  Communications with Law Enforcement or Similar Authorities

Here, the complaint focuses on defendant's alleged communications with the San Bernardino County Sheriff's Department, the San Bernardino County Land Use Services Code Enforcement Division, the Los Angeles County Department of Consumer Affairs, the Los Angeles City Attorney, and animal control.  This included statements that plaintiff was illegally occupying land, mistreating dogs, and running an illegal business.

Civil Code section 47 "establishes a privilege that bars liability in tort for the making of certain statements."  (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*).)  This includes "[a] privileged publication or broadcast" made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . ."  (Civ. Code, § 47, subd. (b).)  As our Supreme Court has noted, most cases have found reports to police of suspected criminal activity are privileged under section 47, subdivision (b).  (*Hagberg*, at p. 364.)  The privilege also covers communications to "government authorities reporting a crime or suspected crime."  (*Comstock v. Aber*, *supra*, 212 Cal.App.4th at p. 952.)  These reports may not serve as the predicate for a tort claim except a claim for malicious prosecution.  (*Hagberg*, at p. 360.)

The California Legislature amended the statute, effective January 1, 2021, to make the privilege inapplicable to false reports made with knowledge of falsity or reckless disregard for the truth or falsity of the report.  (Stats. 2020, ch. 327, § 2; Civ. Code, § 47, subd. (b)(5).)  But the amended statute does not apply to the instant case because defendant's alleged communications occurred in 2020 and there is no indication of legislative intent to apply the amendment retroactively.  (*Quarry v. Doe I* (2012) 53

10

Cal.4th 945, 955 ["there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of '"express language of retroactivity *or* . . . other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application"'"]; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 [statutes are construed to apply prospectively if retroactive application is ambiguous].)

Because a privileged statement cannot be actionable as defamation, plaintiff cannot demonstrate a probability of prevailing on the defamation claim to the extent it is based on defendant's alleged communications with law enforcement or similar authorities.  (Civ. Code, §§ 45, 46; *Taus v. Loftus*, *supra*, 40 Cal.4th at p. 720.)

The complaint further fails to allege what defamatory statements were even made to the Los Angeles County Department of Consumer Affairs, the Los Angeles City Attorney, or animal control.  Instead, the complaint generally alleges defendant made "false allegations" to animal control and "disseminated this defamation" to the Los Angeles County Department of Consumer Affairs and the Los Angeles City Attorney. Because the complaint does not identify any specific statement, plaintiff fails to state a viable claim for relief as to these allegations.

### B.  Online Statements

With respect to defendant's online statements, the parties only dispute the falsity element of defamation.  Defendant contends his statements were true while plaintiff disagrees.  In determining if plaintiff has satisfied her burden on the element of falsity, we keep in mind that on review of an anti-SLAPP motion, we must accept as true the evidence favorable to the plaintiff and that a "'plaintiff needs to show only a case of "minimal merit."'" (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 348.)  We draw all reasonable inferences from the evidence in favor of the plaintiff.  (*Tuchscher*

11

*Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1238-1239.)

In support of her opposition to the anti-SLAPP motion, plaintiff submitted her declaration, which denied the truth of defendant's statements. To undermine defendant's statement, she was squatting on the land, plaintiff also attached a grant deed suggesting she owned the property at issue. In response to defendant's statement plaintiff ran an "illegal aggressive [dog bite] business" or abused the animals, plaintiff provided evidence of a report from animal control. The report included notes from animal control officers who visited plaintiff's property in August 2020. Among other things, the notes indicated the dogs "had shade and shelter" and appeared to be "healthy," "normal," and not "in distress." Because plaintiff presented evidence of her treatment of the dogs and ownership of the property, plaintiff showed her claims had minimal merit to the extent they were based on defendant's statements that plaintiff "is squatting on [the] land and doesn't own the land," "runs [an] illegal aggressive [dog bite] business," and "keeps the [d]ogs under straight sun."

Defendant counters the above evidence by relying on plaintiff's own Web site, which he claims supports the veracity of his statements. He points to his declaration, which included a screenshot of a Web site stating: "Our German Shepherds come through acclimatization to low and high temperatures that they strive while in mountains or performing their duties in any climate." But this statement does not prove plaintiff ran an illegal business or kept the dogs "under straight sun."

Defendant also relies on a notice of violation issued in October 2020 by the San Bernardino County Land Use Services Code Enforcement Division. The notice indicates plaintiff was "[o]perating a kennel on a property listed as vacant with no established Primary Use . . . ." The notice appears to include the investigator's notes, which indicate plaintiff said she would try to obtain the required permits. As the trial court correctly found, "the mere fact that there are pending cases and/or investigations

12

being conducted against plaintiff does not necessarily prove she has abused any animals" or was running an "illegal aggressive [dog bite] business." But we agree the notice of violation defeats the complaint's allegation that defendant "falsely states . . . on [his] Facebook page . . . that Notice of Violation WAS issued on October 13 of 2020 . . . ." Because defendant's evidence shows his alleged statement was true (a notice of violation *was* issued on October 13, 2020), this allegation is stricken.

Defendant next points to an October 2020 temporary restraining order issued in another case. The temporary restraining order enjoined plaintiff from keeping dogs without required permits, failing to provide housing, food, or water for the dogs, or tethering a dog for longer than three hours in a 24-hour period. Because plaintiff was enjoined from keeping dogs without the required permits, the trial court essentially shut down her business for some period of time. In other words, defendant's statement that plaintiff's business was ordered to shut down is true. While plaintiff contends the court ultimately denied defendant's request for a preliminary injunction, plaintiff's business still was shut down (even if just for one day). We accordingly strike the complaint's allegation that defendant falsely stated plaintiff's "business has been ordered 'to shut down.'"

Defendant further argues his statement that plaintiff's dogs "are in horrible condition" is a nonactionable statement of opinion. We agree. The criticism is too vague to be actionable and does not imply a provably false assertion of fact. (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1047-1058 [employee's statement about ""'horrible working experiences'"" was protected opinion]; *Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1270 ["a subjective judgment of the person making the statement" is not one that implies a provably false factual assertion].)

13

Defendant's statement that plaintiff "was arrested on Animal Cruelty Charges" also is nonactionable because it is true. Indeed, the complaint concedes officers "detained [p]laintiff" in August 2020. The complaint explains plaintiff and her daughter "were taken to jail, where they spent 4 days without access neither to phone call, nor requested attorney with bail status as ineligible." This occurred after defendant allegedly called the police to report plaintiff was illegally occupying land and kept dogs on the property without shelter, food, or water. Despite these allegations, plaintiff contends she was not arrested "but detained only and no criminal case against her was [ever] opened and County had paid $325000 as settlement . . . for mistakes of unwarranted detention by deputy . . . ." But defendant never said plaintiff was prosecuted or convicted of animal cruelty. He said she was arrested for animal cruelty, which plaintiff does not dispute.

Finally, the complaint alleges defendant posted a photograph of plaintiff that "displays [p]laintiff not in real normal appearance" along with an image of plaintiff's private property. According to defendant's declaration, one of defendant's clients took the unaltered photograph of plaintiff while animal rescuers took the photograph of plaintiff's property. Plaintiff does not explain how the photographs were inaccurate. But we acknowledge the potentially defamatory aspect arises from the caption defendant included with his posts: "Meet Alla Zorikova, animal abuser being helped by San Bernardino County Sheriff's Department. Click here to see an interactive map of the land she is squatting on to run an illegal 'protection dog' business." "[T]he publication of [these] photograph[s] with the innuendo in the caption, viewed in the light most favorable to [plaintiff], was reasonably susceptible of a libelous meaning . . . ." (*Gomes v. Fried* (1982) 136 Cal.App.3d 924, 935.)

For the foregoing reasons, paragraphs 11, 37, 42, 54, 55, 56, and 57 of the complaint are stricken. As to the remaining allegations, the trial court properly found plaintiff satisfied the minimal merit showing.

## DISPOSITION

The order is affirmed in part and reversed in part. On remand, the trial court is directed to enter a new order granting the anti-SLAPP motion in part with respect to the defamation and libel claims. The court is ordered to strike paragraphs 11, 37, 42, 54, 55, 56, and 57 of the complaint. The anti-SLAPP motion is otherwise denied as to the remaining allegations in the defamation and libel causes of action. In the interests of justice, each side is to bear his or her own costs on appeal.

SANCHEZ, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

15