Filed 9/24/24  Mouzari v. Jiang CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AZAR MOUZARI et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>MARGARET JIANG<br><br>Defendant and Appellant. | B331164<br><br>(Los Angeles County<br>Super. Ct. No. 23SMCV00571) |

APPEAL from judgment of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Affirmed.

The Law Office of Whitney D. Ackerman, Whitney D. Ackerman. Joshua C. Greer and Duncan McGee Nefcy for Defendant and Appellant.

Azar Mouzari, in pro. per; Beverly Hills Trial Attorneys, Nilofar Nouri for Plaintiffs and Respondents.

## INTRODUCTION

Appellant Margaret Jiang appeals from the denial of her special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16,[1] filed in a landlord-tenant dispute. Respondents Azar Mouzari and Hassan Nafchi (the landlords) rented a guesthouse on their property to Jiang. The landlords sued Jiang, alleging that she engaged in various acts in breach of her lease agreement, including installing an unpermitted gas line, refusing to allow the landlords access to the property, and failing to pay her rent and utilities. The landlords also alleged that as a result of the improper gas line, the Los Angeles Department of Building and Safety (LADBS) issued a citation and required substantial repair work to be done, resulting in a loss of rental income for their property.

In her special motion to strike, Jiang argued that the landlords' claims arose in part from her communications with the LADBS, which resulted in the citation for the property. The trial court denied the motion, finding that any such communications would be protected activity, but that none of the claims in the complaint arose from Jiang's communications. We agree with the trial court that the landlords' claims do not arise out of protected activity under section 425.16. We therefore affirm. We deny the landlords' motion for sanctions on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Complaint

The landlords, as trustees of the Savannah Kiam Group, Associates, Partners and Family Revocable Living Trust, own a residential property in Los Angeles. In April 2021, they rented a guest house on the property to Jiang, pursuant to a one-year written lease agreement. The parties subsequently signed a lease extension for an additional year to April 2023.

The landlords filed a complaint against Jiang in February 2023, alleging claims for breach of contract, breach of the implied covenant of good

---

[1]    All further undesignated statutory references are to the Code of Civil Procedure. "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

faith and fair dealing, private nuisance, and waste.[2] The landlords alleged that Jiang "caused substantial damage to the Property and created a nuisance" by installing an unpermitted gas line on the property. The landlords alleged that they were aware that Jiang was installing a gas range in her residence, but the "work was completed, directed, and paid for solely by" the tenant. She was "required to apply for a permit and to pass city inspection" in order to install the gas line for the new range, but Jiang failed to do so, in breach of her lease. The landlords further alleged that they became aware of the issue in December 2022 when they received a notice from the LADBS. "As a direct result of not getting the required permit and undergoing the needed inspection, the work directed by [Jiang] pertaining to the gas line has created significant damage to the Property and created a nuisance, which must now be fixed by the [landlords]." In addition, the "improper gas line installation" created a "material hazard and must be remedied without delay in order to avoid any further damage."

The landlords further alleged that Jiang violated the lease by refusing the landlords access to the unit despite being provided the necessary notice. As an example, the landlords alleged that "despite having been provided timely and sufficient notice that the [LADBS] would be conducting an inspection of the unit on February 1, 2023, [Jiang] did not allow access to the unit to the inspector and to [the landlords]," in violation of the lease. The landlords alleged that they provided proper notice of the inspection, and "hired a contractor to check and remedy the issue with the gas line," but Jiang refused to allow access to the unit. Jiang's "conduct in refusing access to the unit created a hazard given that the subject gas line has created a health hazard and potentially [sic] safety hazard to the entire Property." As a result of Jiang's conduct, "including the unpermitted installation of the gas line, the [LADBS] cited [the landlords] with an Order to Comply which requires significant work to be completed on the premises." The landlords further alleged that according to the LADBS, Jiang had to vacate the premises, as the property could not be inhabited until the repair work was completed as required by the Order to Comply. The landlords further alleged that they were unable to rent out the property until repairs were complete,

---

[2] Mouzari, an attorney, represented the plaintiffs before the trial court.

3

"given the health/safety hazard that exist [*sic*] on the Property as a direct result of [Jiang's] conduct," resulting in a loss of rental income.

The landlords also alleged that Jiang had failed to pay rent since February 2023, failed to pay utilities for the property since October 2022, and owed late fees under the lease agreement. Due to the "significant damage caused by [Jiang] to the Property," the landlords elected to terminate the lease. However, Jiang "has refused to vacate the property." As a result, the landlords alleged that they "incurred significant monetary damages, loss of rent/income and the loss of enjoyment of property rights."

As relevant here,[3] in the first cause of action for breach of contract, the landlords specifically alleged that the tenant breached the lease agreement by damaging the property, failing to ensure the installation of the gas line was "done correctly and in accordance with all applicable laws," refusing to allow the landlords or the LADBS inspector to access the unit, and failing to pay all rent and utilities due. The landlords alleged that as a result of these breaches, they sustained damages including "property damages, past rent due, past utilities due, late fees due, and loss of rental value and rental income." In particular, as a result of "being unable to remedy the issues with [the] gas line," the landlords alleged that they were incurring at least $9,000 per month in lost rental income starting in February 2023.

In the second cause of action for breach of implied covenant of good faith and fair dealing, the landlords alleged that Jiang breached the implied covenant in the lease agreement by failing to pay rent and utilities, denying access to the property upon proper notice, and failing to ensure that Jiang "does not disturb, annoy, endanger or interfere with the Property or her neighbors."

Jiang filed a cross-complaint against the landlords on February 24, 2023, alleging 15 claims related to purported defects in the premises and the landlords' conduct during her tenancy. These claims are not at issue in this appeal.

---

[3]     Jiang does not challenge on appeal the denial of her anti-SLAPP motion as to the third cause of action for private nuisance or the fourth cause of action for waste.

4

**B. Anti-SLAPP motion**

**1. Motion**

Jiang filed a special motion to strike portions of the complaint under section 425.16, the anti-SLAPP statute. "Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) When "claims are stricken from the pleadings for lack of merit, [the plaintiff] may no longer seek to impose liability on defendants for having engaged in these protected acts." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1019 (*Bonni*).) We discuss here only the trial court's finding on the first step, as Jiang does not raise the second step in this appeal.

In her motion, Jiang sought to strike a portion of each of the four causes of action, to the extent those claims arose "from [Jiang's] right to petition" the LADBS and "to the extent that [the landlords'] claim for damages is linked to said allegations." She argued that each claim arose "in part from [Jiang's] right to complain to the [LADBS] and allow them [*sic*] to inspect the Subject Property and issue code violation notices. That is, [the landlords] claim that they were harmed because the LADBS cited them for housing code violations . . . but [Jiang] is the one who requested services from the LADBS and coordinated the inspection of the property." Jiang submitted a declaration stating that on January 5, 2023, she "contacted a code enforcement officer with the [LADBS] to coordinate an inspection of the Subject Property regarding suspected violations of the Los Angeles Municipal Code." The LADBS officer inspected the property on January 6 and issued a code violation notice on January 25, 2023. Jiang also declared that the landlords had "consistently demanded that [Jiang] **_not_** give any inspector from the City of Los Angeles access to the Subject Property since practically the start of [Jiang's] tenancy." (Emphasis in original.)

Jiang also attached emails from the landlords that she claimed established that their claims were based in part on the contention that the tenant breached the lease agreement "by permitting a code enforcement

5

officer to inspect" the premises.  In support of her argument, Jiang pointed to the paragraphs in the complaint citing the order to comply by the LADBS and concluded that the landlords "are linking their damages, at least in part, directly to the January 25, 2023 Notice of Code Violation that resulted from [the tenant's] exercise of their [*sic*] right to contact the LADBS about code violations."  Jiang also requested judicial notice of the complaint and the January 25, 2023 notice of code violation from the LADBS.  The notice listed multiple violations, including due to an "unapproved kitchen and bathroom" and "hazardous plumbing."

### 2. Opposition and Reply

In their opposition to the special motion to strike, the landlords argued that the allegations of the complaint had nothing to do with Jiang's communications with the LADBS or the resulting inspection of the property.  Indeed, the landlords stated that they filed their lawsuit before they were aware that Jiang had communicated with the LADBS.  Instead, they contended that the complaint arose out of Jiang's conduct in installing an unpermitted gas line, refusing to allow the landlords or others access to the unit, and failing to pay rent and utilities.  The landlords also filed objections to Jiang's evidence submitted with the special motion to strike.

Jiang filed a reply in support of the motion and asserted objections to the landlords' evidence.

### 3. Ruling

There is no reporter's transcript from the hearing on the anti-SLAPP motion. In a written ruling, the court denied Jiang's motion.  The court granted Jiang's request for judicial notice, sustained the landlords' objections to some of Jiang's evidence, and overruled the remaining objections.

For the first step of the anti-SLAPP analysis, the court agreed with Jiang that her communications with the LADBS constituted protected activity under section 425.16.  However, the court found that the landlords' claims did not arise "from those communications or the resulting code violation.  Rather, the claims are based on Tenant's failure to pay rent and utility fees, installation of an unpermitted gas line and refusal to permit Landlord to remedy the defect."  The court noted that the complaint referred to a "City Order" requiring Jiang's eviction, but found that "this peripheral

6

reference does not support a finding that the claims arise from protected activity." Instead, the court concluded that any allegations of protected activity were "incidental" to the landlords' causes of action. The court also found that the fact that the lawsuit was filed after Jiang's communications with the LADBS did "not mean this action is based on protected activity," as these communications "are not the wrongs complained of in the Complaint." The court therefore denied the special motion to strike, finding that Jiang failed to sustain her burden on the first step. The court also denied the landlords' request for attorney fees and costs, declining to find that the special motion to strike was frivolous.

Jiang timely appealed the court's order.

### DISCUSSION

On appeal, Jiang contends the trial court erred in denying the anti-SLAPP motion on the basis that the first and second causes of action did not arise from protected activity. We find no error in the court's holding. However, we decline to find on the record before us that the appeal is frivolous and therefore deny the landlords' motion for sanctions.

### A.     Legal standards

Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).) As such, the anti-SLAPP statute "provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral, supra,* 1 Cal.5th at p. 384.)

As noted above, resolution of an anti-SLAPP motion involves two steps. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Bonni, supra,* 11 Cal.5th at p. 1009, quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' If the

7

plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra*, 11 Cal.5th at p. 1009.)

At issue here is the first step of the inquiry, determining whether the landlords' claims arise from protected activity. In the first step, courts "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, 2 Cal.5th at p. 1063.) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. (*Bonni, supra*, 11 Cal.5th at p. 1009, citing *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park, supra,* 2 Cal.5th at p. 1067.)

**B.    Analysis**

Jiang identifies her communications with the LADBS regarding the property as the actions that are protected under the anti-SLAPP statute. It is undisputed, as the trial court found, that this conduct is protected activity. (See, e.g., *Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1255-1256.) The issue here is whether the landlords' causes of action arise out of those communications.

Jiang acknowledges that some of the conduct on which the landlords' claims are based is not protected. But she argues that we may partially strike a claim where it is a "'mixed cause of action' — that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni, supra*, 11 Cal.5th at p. 1010, quoting *Baral, supra*, 1 Cal.5th at p. 382.) As our Supreme Court has explained, in the first step on a mixed cause of action, "the moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them. In turn, a court should examine whether those acts are protected and supply the basis for any claims. It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are

'disregarded at this stage.' So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims. (*Bonni, supra*, 11 Cal.5th at p. 1010, quoting *Baral, supra*, 1 Cal.5th at p. 396.)

Jiang contends that the landlords "purport to have been damaged by [Jiang's] contact with the LADBS and that they seek recompense for said damage." As such, she argues that the first and second causes of action arise "in part from [Jiang's] protected petitioning activity." Our review of the complaint reveals no such allegations. None of the landlords' claims are based, in whole or in part, on Jiang's communications with LADBS.

Tellingly, the complaint does not refer at all to any communications between Jiang and LADBS. More importantly, the landlords did not allege that the harms they suffered were caused by any communication from Jiang to LADBS, the resulting inspection, or the notice issued by the city. Instead, the complaint alleged that the lease was breached and the landlords were harmed by Jiang's installation of a gas line without the proper permits, her refusal to allow access to the property so that the gas line could be inspected and repaired, and her failure to pay rent and utilities. Jiang fails to point to any allegations in the complaint that even suggest that her communications with the LADBS gave rise to the landlords' claims.

Lacking support for her argument in the complaint itself, Jiang seeks to focus on the evidence submitted in connection with the anti-SLAPP motion, which the court must consider along with the complaint. (See § 425.16, subd. (b)(2); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) This evidence includes texts sent in 2021 and 2022 by the landlords asking Jiang not to grant access to the property to any city inspector and discovery propounded by the landlords asking about Jaing's communications with LADBS. But none of this evidence establishes the requisite nexus between Jiang's communications and the landlords' claims.

In essence, Jiang argues that the landlords claim they were damaged due to the issuance of the notice of code violations, which was caused, in turn, by her complaint to LADBS. She contends that the landlords cannot engage in artful pleading by leaving her notification to LADBS out of the complaint, while it remains the true cause of the alleged damages. But this argument

rests on a faulty premise—none of the claims at issue allege damage resulting from the LADBS inspection. Instead, the complaint alleges damage resulting from Jiang's improper installation of a gas line. Any communication with the LADBS was incidental to these claims; it did not form the basis for the landlords' causes of action. (See *Park, supra*, 2 Cal.5th at p. 1062 ["A claim arises from protected activity when that activity underlies or forms the basis for the claim."]; *Baral, supra*, 1 Cal.5th at p. 394 ["Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16."].) "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra*, 1 Cal.5th at p. 394.) The protected activity here is not alleged in the complaint; moreover, any allegations inferring communications with the LADBS are contextual and do not form the basis for the landlords' claims against the tenant for breach of contract and breach of the implied covenant of good faith and fair dealing.

As such, the trial court did not err in finding that Jiang failed to meet her burden on the first step of the anti-SLAPP analysis and therefore denying the special motion to strike.

## C.   Sanctions

The landlords filed a motion for sanctions on appeal, arguing that Jiang's appeal was frivolous and brought for purposes of delay. The landlords unsuccessfully sought sanctions below. They do not address the trial court's order declining to find that the anti-SLAPP motion was frivolous or solely intended to cause delay. Further, as Jiang observes, the facts regarding a fee waiver issue—on which the landlords base their claim that the appeal was taken for the purpose of delay—are not properly before us. Accordingly, we cannot conclude that sanctions are warranted in this appeal and therefore deny the landlords' motion.

## DISPOSITION

The ruling denying the special motion to strike is affirmed.  The landlords are entitled to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



CURREY, P.J.



ZUKIN, J.