[No. B157587. Second Dist., Div. Six. Jan. 20, 2004.]

DAVID LEVY et al., Plaintiffs and Respondents, v.
CITY OF SANTA MONICA et al., Defendants and Appellants;
TUNDE GARAI, Real Party in Interest.

**COUNSEL**

Marsha Jones Moutrie, City Attorney, Joseph Lawrence, Assistant City Attorney, and Cara E. Silver, Deputy City Attorney, for Defendants and Appellants.

Bannan, Green, Frank & Terzian and Richard R. Terzian for the Cities of Burbank, Cathedral City, Fresno, Hermosa Beach, Newport Beach, Riverside,

Sonoma, Torrance and West Hollywood as Amici Curiae on behalf of Defendants and Appellants.

Harding, Larmore, Kutcher & Kozal, Christopher M. Harding, Kenneth L. Kutcher; Isaacs, Clouse & Crose, James B. Isaacs, Jr., and John A. Crose, Jr., for Plaintiffs and Respondents.

No appearance for Real Party in Interest.

## OPINION

**GILBERT, P. J.**—Santa Monica City Charter section 6.10 states, "Except for the purpose of inquiry, the City Council and its members shall deal with the administrative service under the City Manager solely through the City Manager and neither the City Council nor any member shall give orders to any subordinates of the City Manager, either publicly or privately."

Here we conclude, among other things, that a city council member did not violate Santa Monica City Charter section 6.10 by speaking with city planning department employees on behalf of a constituent to inquire about a structure built on a neighbor's property. An injunction to prevent such communication violates the First Amendment. The First Amendment protects everyone, even politicians. (See *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944 [52 Cal.Rptr.2d 357].)

The City of Santa Monica (City) and council member Ken Genser (City) appeal an order denying their "SLAPP" (strategic lawsuit against public participation) motion to strike the lawsuit filed against them by David and Beth Levy (the Levys). (Code Civ. Proc., § 425.16.) We reverse because City's activity is protected under SLAPP and the Levys did not demonstrate a probability of prevailing on any of their causes of action.

### FACTS

The Levys spent $11,000 to build a large elevated backyard playhouse for their four-year-old son. City building inspector Mike Gruett advised the Levys that their neighbor Tunde Garai had complained about the playhouse. Gruett told them they had to remodel it to meet city building standards and "relocate[] [it] so that it was at least five feet from the rear lot line." The Levys spent $2,000 to modify the structure to comply with the City's specifications. The completed structure was 13 feet high. It was located near a tree and supported by wooden posts which extended approximately seven feet

from the ground. Robert Flowers, a city inspector, checked it and told the Levys that it "was in full compliance with . . . City regulations."

Garai complained to the City's building and safety department about the playhouse. She also complained to Genser who was both her city council representative and the mayor.

On March 15, 2000, Genser sent an e-mail on behalf of Garai to Suzanne Frick, the City's director of planning and community development, that said, "[C]ould you look into this? Is this structure being built without permits? And could it be built with a permit? Please feel free to contact [Garai] directly."

On April 2, 2000, Genser sent another e-mail to Frick to find out "the status of the complaint [he] forwarded" to her. He said, "I just did a 'quick' review of the code. I can't say that I am necessarily accurate . . . but: Mike's letter said a 5-ft. rear setback was required. I think the code requires the same rear setback as the rear yard—generally 15 feet (?) [¶] . . . [¶] I wonder if the space under the first floor should be considered a story. (I haven't found a citation to support this—yet.)"

Frick "did not consider these e-mails to be orders." She treated them as "citizen complaints" and referred them to the zoning administrator. Genser simultaneously e-mailed copies to Susan McCarthy, the city manager, who did not consider the e-mails to be orders to City staff.

On August 4, 2000, Gruett sent the Levys a "Notice of Violation" which "directed [them] to remove" or modify the playhouse because it was an "unapproved structure[.]" The notice said the playhouse was a two-story structure that had to be "15 feet from the property line[.]" This notice did not mention appeal rights.

Prior to filing their lawsuit, the Levys' attorney, Christopher Harding, had a discussion with Marsha Moutrie, the city attorney, who told him "that City staff did not intend to take any enforcement action of any kind against the Levys prior to discussing their claim with the City Council . . .." She said, "I would recommend to the City Council that the City forego enforcement based on the equities of the case, and that I anticipated the City Council would follow my recommendation." She said, "it would not be necessary to file a lawsuit, that the City would carefully review the matter, and that the dispute could be informally resolved."

The Levys did not wait for the city council meeting and filed a complaint for injunctive, declaratory relief and damages against the City and Genser. They included Garai as a "Real Party in Interest." Later they filed an

amended complaint alleging that the City "confirmed in writing that the Levys may keep their son's playhouse but asserted that it constitutes a legal *non-conforming structure*[.]" (Italics added.) Their first cause of action sought a declaratory judgment that the playhouse was a "conforming structure."

The second cause of action sought a permanent injunction and a declaratory judgment that the city council members "are precluded by Section 6.10 [of the City Charter] *from engaging in acts designed to influence* City administrative staff through direct communication with City staff (other than the City Manager), with respect to zoning enforcement matters such as the Levy playhouse matter." (Italics added.)

The third cause of action sought damages under the federal civil rights statute (42 U.S.C. § 1983) for the violation of the Levys' "due process right to a hearing . . . before being required to modify or remove their son's playhouse."

The City moved to strike the complaint under the SLAPP statute and contended the first and third causes of action were moot because the City rescinded the notice of violation.

The Levys opposed the motion with several declarations. A declaration by attorney Christopher Harding stated the City "continues to maintain . . . that the Levy playhouse is a non-conforming structure[.]" Another declaration by Gruett said the notice of violation should have advised the Levys about their appeal rights. But his supervisor Timothy McCormick, the City's chief building officer, told him the notices did not contain such advisements because "the City did not want to encourage appeals by giving people notice of their rights." Gruett said that the playhouse "conformed to the Zoning Ordinance[.]" He and McCormick determined it was "a lawful one-story ancillary structure." But they were told by the chief City planners to "treat [it] as a two-story structure[.]"

Robert Sullivan, a real estate broker, said the City's classification of the playhouse as a "non-conforming" structure has an "adverse effect on the marketability of [the Levys'] home." Former city council member Paul Rosenstein declared, "I am concerned . . . that the Levy playhouse matter is not an isolated incident, but rather an example of what has become 'business as usual' for one or more members of the Santa Monica City Council."

The Court denied the motion. It ruled SLAPP was not applicable, but even if it were, the Levys met their burden to demonstrate a probability of success on all their causes of action.

DISCUSSION

I. *The Applicability of SLAPP*

The City contends that the Levys' action arose from Genser's and Garai's "constitutionally-protected speech or petitioning activity." It argues the trial court erred by ruling that SLAPP did not apply. We agree.

 A SLAPP suit is a lawsuit that chills "a party's constitutional right of petition or free speech." (*State Farm General Insurance Company v. Majorino* (2002) 99 Cal.App.4th 974, 975 [121 Cal.Rptr.2d 719].) The SLAPP statute permits the defendant to file a motion to strike a cause of action that interferes with those rights. (Code Civ. Proc., § 425.16.) To prevail, the defendant must show "that the plaintiff's claims arise from an act of the defendant in furtherance of the defendant's right of petition or free speech." (*State Farm General Insurance Company*, at p. 977.) Such acts include any written or oral statement made before a legislative, executive or judicial body, or "any other official proceeding authorized by law." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703]; Code Civ. Proc., § 425.16, subd. (e).) Courts must construe these provisions broadly. (*Navellier*, at p. 92.)

If an action falls within SLAPP, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.) To do this, he or she must show " 'that the complaint is both legally sufficient and supported by . . . facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Id.* at pp. 88–89.) The trial court may not weigh the evidence in deciding whether the plaintiff meets the burden, and we review the record de novo. (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880]; *Lafayette Morehouse Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 867 [44 Cal.Rptr.2d 46].)

Here the City met its burden to show that the Levys' action arose from Genser's and Garai's constitutionally protected speech. The complaint alleges that Garai complained to Genser about the playhouse that had been approved by City building officials. Genser contacted the City's planning staff on her behalf because of Garai's disagreement with the City's action. The Levys incorporated these allegations into each cause of action and sued Garai and Genser.

Garai's act of contacting her representative and Genser's act of contacting planning staff are petitions for grievances against the government protected by the First Amendment. (*Bradbury v. Superior Court* (1997) 49 Cal.App.4th

1108, 1116 [57 Cal.Rptr.2d 207]; *American Civil Liberties Union of Southern California v. Board of Education* (1961) 55 Cal.2d 167, 178 [10 Cal.Rptr. 647, 359 P.2d 45]; *Nelson v. City of Selma* (9th Cir. 1989) 881 F.2d 836, 839.) ■ The court erred by ruling that SLAPP did not apply. The Levys did not meet their burden of demonstrating probable success on their causes of action. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.)

■ The first cause of action seeks a declaratory judgment that the playhouse "conforms with the Zoning Ordinance[.]" " 'The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695].) A plaintiff may seek declaratory relief to resolve a dispute about the impact of a zoning ordinance. (*Alameda Co. Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752]; *Toso v. City of Santa Barbara* (1980) 101 Cal.App.3d 934, 948 [162 Cal.Rptr. 210].)

The City contends the issue is moot and there is no actual controversy. We agree. The city attorney informed the Levys that "the City has rescinded the Notices of Violation for the playhouse . . . . The rescission is unequivocal. The City has no intention of reissuing notices." Because of this there is no "actual, present controversy" which requires resolution by the court. (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 79.) This element was necessary to prove a cause of action for declaratory relief. Moreover, real estate broker Sullivan's conclusory declaration on the home's marketability was inadequate to show damages. The Levys did not meet their burden to show a probability of success on the merits.

## II. *The Federal Civil Rights Cause of Action*

The City contends the trial court erred because the Levys did not meet their burden to show a probability of prevailing on the federal civil rights cause of action (1983 claim). (42 U.S.C. § 1983.) We agree.

A plaintiff may state a 1983 claim by alleging "facts showing a deprivation of a right" protected by federal law. (*Green v. Obledo* (1984) 161 Cal.App.3d 678, 682 [207 Cal.Rptr. 830].) Local governments may be sued under 42 United States Code section 1983 where their official policies or practices violate procedural due process rights. (*Carey v. Piphus* (1978) 435 U.S. 247, 266 [55 L.Ed.2d 252, 98 S.Ct. 1042].)

■ The City argues that this cause of action is moot because it rescinded the notice of violation. As the City notes, it "revamped its procedure for issuing orders and provided an extensive appeal and hearing process." The Levys did

not show that the City has threatened to remove the playhouse in the future or that it would do so without proper notice. They did not produce sufficient evidence to show that they suffered damages. Real estate broker Sullivan's declaration fares no better in this cause of action. Nor did they show that the City had an official policy that deprived homeowners of due process notice. Even if Gruett and McCormick did not provide them proper notice of appeal rights, that by itself is insufficient to impose liability on the City. "Local governments have no liability under 42 United States Code section 1983 simply because their employees may have violated a plaintiff's constitutional rights; the doctrine of respondent superior does not apply. [Citation.]" (*Choate v. County of Orange* (2001) 86 Cal.App.4th 312, 328 [103 Cal.Rptr.2d 339].) The Levys are not entitled to "an abstract trial on the constitutionality" of the past actions of some City employees that cause no damage. (*Id.* at pp. 329–331.) The Levys did not meet their burden.

### III. *Injunctive and Declaratory Relief Against the City Council*

The City contends that the court erred by ruling that the Levys met their burden to show they would prevail on their second cause of action to enforce City Charter section 6.10 (Section 6.10) by declaratory and injunctive relief. We agree.

The Levys seek a permanent injunction and a declaratory judgment that "the City Council and its individual members are precluded by Section 6.10 *from engaging in acts designed to influence* City administrative staff through direct communication with City staff (other than the City Manager), with respect to zoning enforcement matters such as the Levy playhouse matter." (Italics added.) They also allege they "are entitled to issuance of a permanent injunction prohibiting members of the City Council [and their staffs] from violating Section [6.10.]" They state the injunction is necessary "to allow city administrative personnel to carry out their administrative duties *free from direct pressure or influence by*" city council members. (Italics added.)

The Levys contend the purpose of Section 6.10 is to prevent city council members from interfering with administrative staff. They claim they should make complaints on behalf of constituents directly through the city manager. But Section 6.10 allows direct contact "for the purpose of inquiry." That is what Genser did. He made an inquiry on behalf of Garai.

The Levys contend Genser violated Section 6.10 by what he said to City staff. But this section prohibits "orders to any subordinates." The Levys did not show that Genser gave orders. Genser's declaration states he "never instructed or ordered" any City staff "to take any specific enforcement action[.]" Frick said she did not consider the e-mails to be orders.

The Levys contend Genser violated Section 6.10 by "advocating" on behalf of Garai. "Government officials are frequently called upon to be ombudsmen for their constituents. In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals . . .." (*Manistee Town Center v. City of Glendale* (9th Cir. 2000) 227 F.3d 1090, 1093.) "This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens." (*Ibid.*)

Under the First Amendment, legislators are "given the widest latitude to express their views" and there are no "stricter 'free speech' standards on [them] than on the general public." (*Eller Outdoor Advertising Co. v. Board of Supervisors* (1979) 89 Cal.App.3d 76, 80 [152 Cal.Rptr. 358].) ██ Laws that restrict that freedom must be narrowly construed. (*Ibid.*) City officials have First Amendment protection when they respond to inquiries from the public about the city's actions on construction projects. (*Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 376–377 [54 Cal.Rptr.2d 781].)

The Levys seek to enjoin council members from advocating their constituents' positions, applying "direct pressure" or "engaging in acts designed to influence" City administrative staff. But that is an overly broad restraint on speech which would inhibit constitutionally protected activity. (*Bond v. Floyd* (1966) 385 U.S. 116, 136 [17 L.Ed.2d 235, 87 S.Ct. 339]; *Baggett v. Bullitt* (1964) 377 U.S. 360, 372 [12 L.Ed.2d 377, 84 S.Ct. 1316]; *American Civil Liberties Union of Southern California v. Board of Education, supra,* 55 Cal.2d at pp. 179–180.)

It is not easy to distinguish between inquiry and "acts" designed to influence decision. "General words create different and often particular impressions on different minds." (*Thomas v. Collins* (1945) 323 U.S. 516, 534 [89 L.Ed. 430, 65 S.Ct. 315].)

For example, in *Thomas*, a labor leader was held in contempt for violating a restraining order which prevented him from soliciting people to join a union. The Supreme Court ruled that his conviction violated the First Amendment because the trial court's order "chilled" free speech. Under the order he could discuss the attributes of the union, but was prohibited from soliciting or inviting the audience to join it. The court noted it would be difficult for the speaker to distinguish between prohibited and protected speech. He would have to anticipate how the audience might interpret his remarks. There was no guarantee that "anything he might say upon the general subject would not be understood by some as an invitation. In short, the supposedly clear-cut distinction between discussion, laudation, general advocacy, and solicitation puts the speaker . . . wholly at the mercy of the

varied understanding of his hearers . . . ." (*Thomas v. Collins, supra,* 323 U.S. at p. 535.) "Such a distinction offers no security for free discussion." (*Ibid.*)

That is the case here. For some, a council member's inquiry for a constituent is advocacy simply because it calls attention to the constituent's position. To the head of a city agency, a council member's act of faxing citizen complaints about the agency might be considered an "act designed to influence" or "direct pressure." For the Levys, an inquiry is advocacy where it could change the status quo or influence the result. Under their definition, virtually all inquiries would be suspect. Council members who may make inquiries under Section 6.10 might refrain from doing so because of fear of being sued or held in contempt. For example, council members could be inhibited from calling City agencies about matters crucial to the community such as securing help for families living in substandard housing. "Free speech may not be so inhibited." (*Baggett v. Bullitt, supra,* 377 U.S. at p. 372.)

The purpose of Section 6.10 is to define the lines of authority within City government, not to prohibit protected speech. Interpreting this section to prohibit "orders" to City staff is a bright line consistent with the purpose of Section 6.10 and the First Amendment. Counsel members "are entitled to speak as they please on matters vital to them; errors in judgment . . . may be exposed, of course, but not through punishment for contempt for the expression." (*Wood v. Georgia* (1962) 370 U.S. 375, 389 [8 L.Ed.2d 569, 82 S.Ct. 1364].) "[E]rroneous statements must be protected to give freedom of expression the breathing space it needs to survive." (*Bond v. Floyd, supra,* 385 U.S. at p. 136.) There are better ways to discourage improper conduct. "Under our system of government, counterargument and education are the weapons available to expose these matters, not abridgment of the rights of free speech." (*Wood,* at p. 389.)

Moreover, the Levys did not meet their evidentiary burden for injunctive and declaratory relief. Their complaint alleged an ongoing "pattern of intervention" by council members in "City staff's performance." But they made these general allegations on information and belief and did not produce admissible evidence to support them. Rosenstein stated, "the Levy playhouse matter is not an isolated incident, but . . . 'business as usual' for one or more [Council] members[.]" But this conclusory statement is insufficient. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497–1498 [45 Cal.Rptr.2d 624].) He did not state facts, name the council members or show his personal knowledge. (*Ibid.*) Other declarations the Levys filed regarding Genser's conduct rely on hearsay and speculation.

The order denying the City's motion to strike the Levy's action is reversed. Costs to appellants.

Yegan, J., and Coffee, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 30, 2004.