Filed 12/4/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALLISON J. LITTLEFIELD,<br><br>    Plaintiff and Appellant<br><br>v.<br><br>SCOTT LITTLEFIELD et al.,<br><br>    Defendants and Appellants. | A167764<br><br>(San Mateo County Super.<br>Ct. No. 22PRO01233)<br><br>ORDER MODIFYING<br>OPINION; NO CHANGE IN<br>JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on November 15, 2024, be modified as follows:

On page 4, in the second paragraph, in the third sentence, replace the word "Appellants" with "They" so that the sentence reads, "They did not stop Limbada from engaging in wrongful employment practices with LLC employees or from using the Ranch security system to eavesdrop on Allison and her family."

On page 11, in the first paragraph, in the second sentence, delete the word "the" before the word "appellants" so that the sentence reads, "The petition alleges a long litany of acts and omissions by appellants as factual predicates for its claims."  In the same paragraph, in the third sentence, also delete the word "the" before the word "appellants" so that the sentence reads,

"To recap just some of them, there are allegations regarding appellants' misuse of Trust funds, their concealment of information, their conversion of Allison's personal property, their decision to remove her from the board, their disregard of her suggestions and inquiries regarding the management of the LLC, their imposition of restrictions on her and her husband's use of the Ranch, and their failures to respond to an array of alleged misconduct by Limbada."  And in the same paragraph, in the fifth sentence, also delete the word "the" before the word "appellants" in both places that it appears, so that the sentence reads, "Among other things, it asks for appellants' removal as co-trustees and an order preventing them from serving as Managers of the LLC, the return of Trust funds, the lifting of the restrictions on Allison's and her husband's use of the Ranch, Allison's reinstatement as a Manager of the LLC, and an order enjoining appellants from harassing, disparaging, or defaming Allison or from allowing employes or agents of the LLC to do so."

On page 17, in the second paragraph, in the third sentence, replace the word "her" with "Allison," and replace the word "Allison" at the end of the sentence with "her" so that the sentence reads, "Appellants' principal argument, both here and in the trial court, was that the petition requested orders enjoining them from disparaging or defaming Allison, or from permitting LLC employees to do so, and even further, that would require them to prevent LLC employees from 'offending' her."

On page 20, in the first paragraph, in the fifth sentence add the word "than" before the word "under" so that the sentence reads, "If there were no factual allegations to justify those requests, appellants could have moved to strike them as irrelevant or improper matter under sections 435 and 436 rather than under the anti-SLAPP law."

2

There is no change in the judgment.

Date: _____  _____, P. J.

Filed 11/15/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALLISON J. LITTLEFIELD,<br><br>        Plaintiff and Appellant<br>v.<br><br>SCOTT LITTLEFIELD et al.,<br><br>        Defendants and Appellants. | A167764<br><br>(San Mateo County Super.<br>Ct. No. 22PRO01233) |

Scott Littlefield, David Littlefield, and Denise Sobel (collectively, appellants) appeal from the court's order denying their special motion to strike under Code of Civil Procedure[1] section 425.16 (the anti-SLAPP law). Like the trial court, we conclude that appellants have failed to satisfy their burden of showing that Allison Littlefield's petition arises from protected activity. We affirm the trial court's order denying appellants' anti-SLAPP motion.

Allison[2] cross-appealed from the trial court's order insofar as it denied her request for attorney's fees under section 425.16, subdivision (c)(1) (section 425.16(c)(1)). We agree with her that the anti-SLAPP motion was frivolous and therefore that the trial court abused its discretion in denying

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Because several of the parties in this appeal share the same last name, we will use their first names when we refer to them individually. No disrespect is intended.

the request.  We reverse that portion of the order and remand for a determination of the appropriate award.

## BACKGROUND

### *The Petition*

The parties to this dispute are co-trustees of The Pony Tracks Ranch Trust (the Trust) and its three sub-trusts.  David and Scott are Allison's brothers, and Denise Sobel is Allison's aunt.  Allison filed a verified petition alleging "request[s] for relief" for:  (1) removal of appellants as co-trustees under Probate Code section 15642; (2) breach of fiduciary duty; and (3) breach of the Trust.[3]  The petition also included a "cause of action" for declaratory and injunctive relief.

The petition alleged that Jacques Littlefield, the father of Allison, David, and Scott, created the Trust "to acquire and retain for the collective benefit of [his] descendants" the real property known as Pony Tracks Ranch (the Ranch).  The Trust allowed Jacques' descendants to use and occupy the Ranch rent free, to live in any of the buildings on the property, to keep animals there, and to use the property for parties, hunting, hiking, and camping.  Jacques' descendants were also to "work together in a spirit of family and cooperation in resolving any disputes about the acquisition, use, ownership and sale of the Ranch."

The Ranch is owned by Pony Tracks Ranch LLC (the LLC).  The three sub-trusts are members of the LLC, and the LLC is managed by a board of managers (the board).  Each of the parties to this dispute was initially named as a member of the board in his or her individual capacity.  The LLC's purpose is to acquire, own, operate, finance, refinance, and hold the Ranch.

---

[3] Notwithstanding the labels in the petition, we will refer to these "requests for relief" as "causes of action."

2

At various times over the years, Allison oversaw Ranch operations. In 2020, Allison resumed an active role in supervising Ranch operations, and the LLC simultaneously employed Stacey Limbada full time to manage the Ranch. For unknown reasons, Limbada resisted Allison's efforts to supervise Ranch operations and allegedly "began a campaign against [Allison] and [Allison's husband, Hiruy Amanuel]." Limbada committed numerous acts of "misconduct," including refusing to do simple tasks for Allison, accusing Amanuel of crashing an ATV, taking too long to do requested work and not finishing work, falsely accusing Allison of leaving a mess at the Ranch, denying receipt of a key card sign-out sheet, and refusing to arrange for Allison to use a van owned by the Ranch. Appellants did nothing to prevent Limbada's misconduct and insubordinate behavior.

In January 2021, Limbada encountered Amanuel at the Ranch, began yelling, threatened to call the police, and accused Amanuel of threatening her with a weapon when he was unarmed. Amanuel informed David about the incident, and Allison asked appellants to protect her husband. Appellants did not ask Amanuel what happened, and, when they responded, they accused Amanuel of bullying Limbada and said the LLC had an affirmative obligation to ensure Limbada was not subject to harassment and bullying.

The petition included additional allegations regarding Limbada, including that she asked numerous questions to the LLC's attorney about Amanuel's past in a perceived effort to " 'dig up dirt;' " she made false accusations against Allison and called for Allison's removal from the board; she engaged in wrongful employment practices with LLC employees and subjected the LLC to lawsuits on that basis; she complained about Allison visiting the Ranch and used the Ranch security system to eavesdrop on

3

Allison and Amanuel; and she falsely accused Amanuel of posting an allegedly defamatory and harassing letter about her online.

Regarding appellants, Allison alleged that they hired legal counsel for themselves and improperly used Trust assets to pay for the expenses. They ignored Allison's request for budgetary information about repairs on the Ranch. Appellants did not stop Limbada from engaging in wrongful employment practices with LLC employees or from using the Ranch security system to eavesdrop on Allison and her family. They refused to hire attorneys that Allison suggested for certain matters. They limited Allison's use of the Ranch and practically prevented her use entirely. They banned Amanuel from the Ranch because of Limbada's accusation about the letter posted online. They converted Allison's personal property. Finally, they wrongfully removed Allison from the board and thereafter cut off her access to the Ranch's security systems.

The petition's first cause of action sought removal of appellants as co-trustees because of their alleged breach of the Trust (described below), and their failure and declination to act in a manner consistent with their duties and obligations "including but not limited to the duty to properly manage the LLC and the Trust; to treat [Allison] fairly, equally and in good faith; to not to infringe or otherwise compromise [Allison's] right to use the Ranch, including the right for [Allison] to enjoy the Ranch with her family, including her husband." Allison also sought removal of the co-trustees based on hostility and lack of cooperation, and she alleged that there was "no rationale for how [appellants] could possibly fulfill their fiduciary duties by continuing to employ an employee so openly hostile to [Allison] and her husband."

The second cause of action alleged that appellants breached fiduciary duties to Allison by: (1) failing to treat her with complete fairness; (2) failing

4

to treat her with the highest duty of loyalty; (3) failing to disclose to her all material facts about the Trust's affairs and property; 4) failing to treat her in the same manner as the other Trust beneficiaries; (5) failing to refrain from conducting themselves in any manner that was against Allison's best interests; (6) failing to refrain from deception, concealment or nondisclosure of material facts, misconduct and mismanagement; and (7) treating Allison unequally, unfairly and in a harassing manner.

The third cause of action alleged breach of Trust provisions forbidding the Trust from selling, leasing, or otherwise making the Ranch "unavailable for the use of the trust beneficiaries;" requiring appellants to manage the Ranch in good faith and for the benefit of Jacques' descendants equally; requiring Jacques' children to " 'work together in a spirit of family and cooperation in resolving any disputes about the acquisition, use, ownership and sale of [the Ranch];' " and naming Jacques' descendants as the sole beneficiaries of the Trust. Additionally, appellants "engaged in a pattern of harassment, retaliation and unequal treatment of [Allison] and her family that has resulted in [Allison] being terminated as a Manager of the LLC and in her and her young children being effectively barred from the Ranch by banning Mr. Amanuel from being at the Ranch, as well as other infringements of [Allison's] rights to use and enjoy the Ranch." As relief, Allison requested that the court set aside and/or enjoin Amanuel's ban and enjoin Allison's removal from the board.

The final cause of action sought "a judicial determination and declaration of the parties' rights and duties under the Trust." Allison specifically sought judicial determinations that the Trust precluded appellants from barring Amanuel from using the Ranch when Allison was present; restricting Allison's use of the Ranch and prohibiting her from using

5

the Ranch as other beneficiaries are permitted; removing her from the board; and permitting LLC employees to "harass, disparage, insult, offend or defame [Allison]" or to obtain an agreement with the LLC that it would restrict Allison or Amanuel from using the Ranch.

Each cause of action incorporated the petition's factual allegations. In the prayer for relief, Allison sought, among other things, to enjoin appellants from "harassing, disparaging or defaming [her], or from permitting any employees or other agents of the LLC from doing so." Allison made the same request in the relief she sought for breach of fiduciary duty, and in the cause of action for declaratory relief, she similarly sought a determination that appellants "are not authorized to permit LLC employees such as Ms. Limbada to (i) harass, disparage, insult, offend or defame Petitioner."

### The Anti-SLAPP Motion

Appellants filed a motion to strike the petition under section 425.16 (the motion). Their notice of motion stated that they sought to strike the petition "in its entirety, or in the alternative, to strike" all causes of action and the prayer for relief.

In the argument section of their motion, appellants cited Allison's request for an injunction and maintained that the petition implicated free speech because Allison sought to " 'enjoin' " them " 'from harassing, disparaging or defaming [her], or from permitting any employees or other agents of the LLC from doing so,' " and she sought an order restraining appellants' speech in response to the issue of gun violence at work. Appellants argued that the anti-SLAPP statute applied because "the speech that [Allison] asks to be restricted—the [appellants'] deliberation in response to an employee['s] concerns of guns in the workplace—involves an issue of public interest."

6

Appellants filed declarations from Limbada and Scott in support of their motion. Limbada relayed that she began working for Allison in 2016 and thereafter told Allison and Amanuel that she no longer wanted to work for them because she feared Amanuel was engaged in illegal activity. Limbada began working for the LLC in 2017. She described a confrontation between Amanuel and an employee of the LLC in December 2020 in which Amanuel, armed with a gun, took the employee to a house on the Ranch and placed the gun on the counter while talking to the employee. Limbada reviewed security footage showing Amanuel with a gun, and she sent a photo of that footage to the board. In January 2021, Limbada observed bullet holes in a Ranch building, and she observed gun casings in another building in August 2021. She concluded that Amanuel had been discharging firearms at the Ranch, and she reported this to the board.

Scott described learning of the animosity between Amanuel and Allison and Limbada and events that ensued. In April 2021, Limbada told Scott that Allison and Amanuel sent her a demand letter threatening litigation. Limbada requested that the LLC indemnify her for the cost of her defense under Labor Code section 2802, and the LLC did so. In September 2021, Allison and Amanuel sent a letter demanding that the LLC investigate Limbada's employment misconduct. The LLC investigated through counsel. After the investigation began, the board learned about a fake news website regarding Limbada that published the demand letter that Allison and Amanuel had sent to her. Considering the limited access to the demand letter, the board suspected Allison or Amanuel had created the website. After conducting an investigation of Allison's allegations against Limbada, counsel concluded that Limbada had strong employment claims against the LLC considering Amanuel's conduct (including his use of firearms at the

7

Ranch) and cautioned against subjecting Limbada to any adverse employment actions.  Then, in May 2022, Limbada's attorney sent a letter to the LLC seeking to recover damages for Allison's and Amanuel's conduct.  The LLC settled the dispute and removed Allison from the board as a condition of settlement.  That same month, the board voted to suspend Amanuel from the Ranch, and the board later voted to remove Allison from the board.

Allison opposed the motion, arguing that the action was about the misconduct of trustees managing private property.  With respect to the first step of the anti-SLAPP analysis, Allison argued that appellants failed to satisfy their burden of identifying acts that were protected or causes of action arising from protected activity under section 425.16.  She sought attorney's fees on the ground that the motion was frivolous.  Allison filed six declarations including a declaration from her counsel stating that, among other things, appellants had refused Allison's offer to withdraw the requests for relief that appellants appeared to target in their motion.

### The Trial Court's Ruling

After a hearing, the court denied appellants' motion.  The court's written order states as follows:  "Here, [appellants] failed to identify all allegations of protected activity that relate to what appears to be the relevant claim a request for the Court to grant injunctive relief to enjoin [appellants] from harassing, disparaging or defaming [Allison], or from permitting any employees or other agents of the LLC from doing so.  Further, [appellants] fail to state the elements of the challenged claim and identify what actions by the [appellants] supply those elements and form the basis for liability. [¶] Even if the only allegations relevant to the claim relate to speech concerning the brandishing of a gun at the [Ranch], [appellants] fail to show that this is

8

a protected activity under the category of public interest pursuant to [section 425.16, subdivision (e)(4)] because the allegations concern the speaker and a small, specific audience, it did not involve a public figure, and it was not covered by the news."

Regarding Allison's request for attorney's fees, the court orally stated, "In terms of the issue of whether or not fees are appropriate . . . the court has to determine in awarding fees that the motion was frivolous or solely intended to cause unnecessary delay. I would note this complaint, and the prayers for relief and specifically in the fourth cause of action for declaratory and injunctive relief[,] was drafted very broadly in terms of the relief being sought. It wasn't just about defamation or harassment, which are terms of art in the law that the court can enjoin. We got to disparaging, we got to insulting, and that there were, had . . . the respondent in this case chosen to try to articulate them, some of the portions of the complaint that relied on actions that were taken by employees of the LLC in terms of speaking about things that might be protected conduct. [¶] I don't find that this was a frivolous motion. I don't find that it was solely intended to cause delay. And I don't find that it meets the standards for attorney fees as sanctions. And that is the reason that the court denied those attorneys fees in the tentative and continues to deny them." The subsequent written order stated, "The Court does not find that the motion is frivolous or is solely intended to cause unnecessary delay."

Appellants appealed the court's denial of their motion, and Allison cross-appealed the court's denial of her request for attorney's fees.

9

## DISCUSSION

### I. The Anti-SLAPP Motion

#### A. General Principles and Standard of Review

The anti-SLAPP statute helps "combat lawsuits designed to chill the exercise of free speech and petition rights." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park v. Board of Trustees*).) "Anti-SLAPP procedure involves two steps. First, the moving defendant has the burden of establishing that the lawsuit's claims are based on activity protected by the statute. [Citation.] If the defendant satisfies that step, the burden shifts to the plaintiff to demonstrate under a second step that each challenged claim based on protected activity is legally sufficient and factually substantiated. (*Nirschl v. Schiller* (2023) 91 Cal.App.5th 386, 400 (*Nirschl*).) We resolve this appeal at the first step, so need not discuss the second.

"The first anti-SLAPP step addresses whether a claim 'arises from protected activity.' [Citation.] . . . [A] claim 'arises from protected activity' when 'protected activity' forms a basis for the defendant's liability. [Citation.] 'Protected activity,' in turn, is statutorily defined. 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e).' " (*Nirschl*, *supra*, 91 Cal.App.5th at p. 400.) Appellants here invoke section 425.16, subdivision (e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

We review the trial court's decision to grant or deny an anti-SLAPP motion de novo.  (*Nirschl*, *supra*, 91 Cal.App.5th at p. 400.)

## B.    Appellants Did Not Meet Their Burden at the First Step

This lawsuit is a dispute about co-trustees' obligations to each other. The petition alleges a long litany of acts and omissions by the appellants as factual predicates for its claims.  To recap just some of them, there are allegations regarding the appellants' misuse of Trust funds, their concealment of information, their conversion of Allison's personal property, their decision to remove her from the board, their disregard of her suggestions and inquiries regarding the management of the LLC, their imposition of restrictions on her and her husband's use of the Ranch, and their failures to respond to an array of alleged misconduct by Limbada.  The relief the petition seeks is as varied as the conduct of which it complains. Among other things, it asks for the appellants' removal as co-trustees and an order preventing them from serving as Managers of the LLC, the return of Trust funds, the lifting of the restrictions on Allison's and her husband's use of the Ranch, Allison's reinstatement as a Manager of the LLC, and an order enjoining the appellants from harassing, disparaging, or defaming Allison or from allowing employes or agents of the LLC to do so.

Notwithstanding the diverse range of allegations and requests for relief, appellants moved to strike the petition altogether, or alternatively— although it is not in any meaningful sense an "alternative"—every cause of action in its entirety.  In an understated concession relegated to a footnote of their trial court briefing, appellants did acknowledge that "not everything in the Petition involves protected activity."  Citing *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551, however, they contended that a "mixed" cause of action is subject to an anti-

11

SLAPP motion as long as at least one of the underlying acts is protected conduct.  As appellants should have known, the law had evolved beyond *Haight Ashbury* long before they filed their motion.

In *Baral v. Schnitt* (2016) 1 Cal.5th 376, 394–396, the California Supreme Court held that an allegation-by-allegation approach is necessary in cases involving mixed causes of action.  "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Id.* at p. 396.)  In *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*), the court addressed the proper approach when a single cause of action rests on multiple factual bases, some of which constitute protected activity and some of which do not, and the motion seeks to strike the entire cause of action.  The court wrote:  "[T]o the extent [plaintiff] has alleged various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework.  The [defendants] bear the burden of showing that each allegation supporting [plaintiff's] claim of recovery is one that rests on protected activity.  If the [defendants] carry that burden, [plaintiff] will then need to demonstrate some merit to his claim that those protected acts were taken for impermissible retaliatory reasons; if he cannot, those particular allegations will be stricken.  Conversely, to the extent any acts are unprotected, the claims based on those acts will survive." (*Id.* at p. 1012.)  Appellants' motion, however, did not identify any "particular allegations" of protected activity that they contended should be stricken.  And since they did not show that the petition or any entire cause of action was based solely on protected activity, they did not show that the court could properly strike the petition or all of its causes of action—the only relief they sought.

12

Appellants contend that they did identify all allegations of protected activity, and the claims for relief that supported them, because their motion identified the page and line numbers they sought to strike. But those pages and line numbers simply correspond to the prayer for relief and all four causes of action in their entirety. If there are any specific factual allegations of protected activity in the petition—as we discuss below, even on appeal appellants have not established that there are—the motion did not identify those allegations and explain how they furnished a basis for liability.

Appellants also argue that it is the court's obligation, not theirs, to determine the elements of the challenged claim and what actions by the defendant supply those elements. They point to the following statement in *Park v. Board of Trustees*: "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park v. Board of Trustees, supra*, 2 Cal.5th at p. 1063.)

This argument is meritless. Putting aside that litigants who want courts to consider something are generally expected to identify it, appellants' contention is inconsistent with decisions by the California Supreme Court squarely placing the burden on the moving party. (See, e.g., *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 887 (*Wilson*) ["At the first step of the analysis, the defendant must make two related showings. Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. [Citation.] And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims"]; *Bonni, supra*, 11 Cal.5th at p. 1011 ["If a cause of action contains multiple claims and a moving party fails to

identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims"].)

Moreover, months before appellants filed their opening brief, our colleagues in the Second District held that, where the defendants moved to strike the entire complaint "and did not identify in their motion individual claims or allegations that should be stricken even if the entire complaint were not, the trial court was permitted to deny the anti-SLAPP motion once it concluded—correctly—that the complaint presented at least one claim that did not arise from anti-SLAPP protected conduct." (*Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1106.) We reached a similar conclusion in *Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 100 (*Young*)), which involved a conclusory *Baral* motion stated in the alternative. We even went so far in *Young* as to outline what movants should specifically identify to bear their initial burden in making requests for allegation-by-allegation *Baral*-style relief. (*Id.* at p. 100, fn. 15).

These cases control the outcome here. Although appellants moved "in the alternative" to strike all causes of action in their entirety, they did not show that the petition or any cause of action asserted in it was based solely on protected activity, and they did not identify individual allegations or claims that they believed should be stricken even if the petition or entire causes of action were not. The trial court therefore permissibly denied their motion.

## II. Attorney's Fees

Allison cross-appealed the court's denial of her request for attorney's fees under section 425.16(c)(1). We address her contentions that the court's order should be reversed because the court used the wrong legal standard and because the motion was frivolous.

14

## A.    Governing Principles and Standard of Review

Under section 425.16(c)(1), "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [s]ection 128.5."  "A determination of frivolousness requires a finding the anti-SLAPP 'motion is "totally and completely without merit" (§ 128.5, subd. (b)(2)), that is, "any reasonable attorney would agree such motion is totally devoid of merit." ' "  (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199, italics omitted.)  The court must impose sanctions for a frivolous anti-SLAPP motion.[4]  (*Id.* at pp. 198–199.)

We review the trial court's denial of Allison's request for attorney's fees for abuse of discretion.  (*Moore v. Shaw, supra*, 116 Cal.App.4th at p. 199.)  A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.  (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 36–37.)  Further, an abuse of discretion is shown where a trial court applies the wrong legal standard.  (*Riskin v. Downtown Los Angeles Property Owners Assn.* (2022) 76 Cal.App.5th 438, 446.)

## B.    The Court Used the Correct Legal Standard

Relying on the trial court's comments at the hearing, Allison argues that the court used the wrong legal standard because it evaluated a hypothetical anti-SLAPP motion and not the actual motion before the court. We disagree.

---

[4] Allison does not challenge the court's finding that appellants' motion was not "solely intended to cause unnecessary delay."  We accordingly do not address that part of the court's order.

The record does not affirmatively show the court used the wrong legal standard when making its ruling. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [appellant must affirmatively show error].) At the hearing and in its order, the trial court recited the correct legal standard—it had to find that "the motion" was frivolous or solely intended to delay. Prior to concluding that the motion was not frivolous or solely intended to delay, the court remarked that the petition was broadly drafted, including the request in the fourth case of action seeking to prevent appellants from defaming, harassing, insulting, or disparaging Allison, and that, had appellants "chosen to try to articulate them, some of the portions of the complaint relied on actions that were taken by employees of the LLC in terms of speaking about things that might be protected conduct." Appellants' motion cited the same allegation to which the court orally referred, and the motion alluded (without citation to the petition or evidence) to Limbada's complaint about Amanuel's gun use. Given this context, we read the court's comment as conveying its belief that the motion before it was not frivolous or intended solely for delay despite its poor drafting and failure to show that any claim arose from protected activity. While we ultimately reverse the court's determination on that score, we see no basis to conclude that the court did not address the actual motion before it when rendering its ruling.

## C. The Motion Was Frivolous

While we do not reach our conclusion lightly, the record in this case convinces us that any reasonable attorney would conclude that appellants' motion was totally without merit.

We agree with Allison that "[n]o straight-faced argument can be made" for striking the entire petition or even any entire cause of action, each of which included claims for relief based on clearly unprotected activity such as

16

restricting Allison's use of the Ranch. (See *Park v. Nazari, supra*, 93 Cal.App.5th at p. 1106.) Appellants' own acknowledgement that "not everything in the Petition involves protected activity" should have alerted them to the fact that, at a minimum, they were vastly overreaching. Moreover, no reasonable attorney would conclude that the motion satisfied the rules that govern challenges to mixed causes of action. Appellants' briefing did not even mention the relevant cases from the California Supreme Court.

While these considerations are relevant, they are not necessarily dispositive. Even an obviously overreaching motion may have a non-frivolous kernel, and a court may choose to overlook procedural shortcomings if, for example, the non-moving party fails to raise them in opposition or there is no real question about whether and where the petition has alleged protected activity. Here, however, we see no reasonable argument that the petition sought to impose liability on appellants based on their protected activity.

Appellants' principal argument, both here and in the trial court, was that the petition requested orders enjoining them from disparaging or defaming her, or from permitting LLC employees to do so, and even further, that would require them to prevent LLC employees from "offending" Allison. But the question at the first step is whether the conduct alleged *as the basis for* a claim for relief is protected activity, not whether the remedy sought— considered apart from the conduct on which liability is premised—would impinge on protected activity. (*Hastings College Conservation Committee v. Faigman* (2023) 92 Cal.App.5th 323, 335 (*Faigman*); *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392 [the fact that plaintiff sought an injunction that would enjoin defendant law firm's communication with clients did not establish that the claims were based on protected

17

activity].)  If there are no allegations of protected conduct underlying the claims for relief, an anti-SLAPP motion does not lie.

To the extent appellants offered anything to suggest that Allison was suing them based on protected activity, we find no arguable merit in it. Appellants have not made any argument that the petition alleged actionable instances of defamation or disparagement by them.  If not entirely explicitly, their motion did contend that protected activity formed the basis for the petition's request for an order that would require them to prevent LLC employees from causing Allison "offense."  Among many episodes of discord mentioned in the petition was the following:  "Ms. Limbada became irate and began yelling at Mr. Amanuel for reasons unknown.  She threatened to call the police and accused Mr. Amanuel of threatening her with a weapon." Appellants did not quote this allegation until their reply brief on appeal, but in their motion they wrote that Allison "also asks the Court to restrain Respondents' deliberative process in how to respond to employee concerns of gun violence.  Restricting speech incident to a deliberative process is 'an overly broad restraint on speech which would inhibit constitutionally protected activity.' (*Levy v. City of Santa Monica* (2004) 114 Cal.App.4th 1252, 1261 . . . (Anti-SLAPP motion properly granted where Plaintiff sought to restrain City Council Member's participation in deliberative process on approval of a playhouse).)"  Although this argument was again a characterization of the relief sought, it could have been rephrased to contend that Allison sued appellants based on their past deliberations about how to respond to what Limbada told them about this incident.[5]

---

[5] Even assuming that Limbada's speech was protected activity, standing alone it does not provide a meritorious ground for a motion by *appellants*.  Appellants must show that the petition seeks to impose liability

18

That argument, however, would have been incorrect. We need not consider whether such "deliberations" would be protected activity because the petition does not allege deliberation as a basis for liability. To the extent the petition asserted any claim in relation to this episode, it arose from the *result* of those deliberations—appellants' response or lack of response to Limbada's "offensive" gun accusation—not from the deliberations themselves. (See *Park v. Board of Trustees, supra,* 2 Cal.5th at p. 1068 [discrimination claim brought by professor denied tenure arose from tenure decision, not from protected communications during tenure process]; *Wilson, supra*, 7 Cal.5th at p. 890 ["The anti-SLAPP statute does not apply simply because an employer protests that its personnel decisions followed, or were communicated through, speech or petitioning activity"].) The case appellants cited, *Levy v. City of Santa Monica, supra,* 114 Cal.App.4th 1252, is not on point. There, the alleged wrongful conduct was a councilmember's advocacy on behalf of a constituent with planning department employees (what appellants called "speech incident to a deliberative process"); that conduct furnished the basis for the petitioner's request to enjoin such advocacy in the future. (See *id.* at p. 1261.) By contrast, no reasonable attorney reading Allison's petition would conclude that she sued appellants for a wrongful deliberative act.

To characterize the basis of the petition's claims that way was not only wrong, but frivolous. The petition shows that Allison was aggrieved by the way appellants treated her and her husband, including in response to Limbada's gun accusation, and that she contends such treatment violated

on them based on their own protected activity. (See *Faigman, supra,* 92 Cal.App.5th at p. 333; *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 616–620 (*Medical Marijuana*) [anti-SLAPP motion to strike libel and false light causes of action was properly denied because those claims were not based on conduct by the moving defendants].)

19

their obligations to her as co-trustees. But appellants' motion never demonstrated that any of their alleged mistreatment of her—in response to this incident or any other—constituted protected activity. An anti-SLAPP motion must address what the petition itself asserts as the basis for liability, not something else the defendant believes the claims are or could be based on. (*Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 218; see *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 133–136.) Appellants' strained effort to characterize the petition as an attack on their "deliberations" in our view only betrays their recognition of the problem.

The anti-SLAPP law serves an important purpose, but because a motion automatically stays the litigation and provides for an award of fees, it is also subject to abuse. (See *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1184–1186.) We acknowledge the trial court was troubled by the petition's requests for orders prohibiting defamation, disparagement, and—by LLC employees only—offense. But again, those requests warranted an anti-SLAPP motion only if the petition alleged protected activity as the basis for them. If there were no factual allegations to justify those requests, appellants could have moved to strike them as irrelevant or improper matter under sections 435 and 436 rather under the anti-SLAPP law. (See, e.g., *Medical Marijuana, supra*, 6 Cal.App.5th at p. 621; *Young, supra*, 91 Cal.App.5th at pp. 96–97.) Allison herself apparently considered them inessential because she offered to resolve the motion by striking every request for an order that would impact speech either by appellants themselves or by LLC employees. Citing their desire for a fee award, appellants refused that offer. That was the wrong decision. Any reasonable lawyer would have known there was no legal basis for the court to

strike the petition or every cause of action therein, and no colorable argument that appellants had been sued for engaging in protected activity. Allison was accordingly entitled to an award of reasonable attorney's fees, and the trial court lacked discretion to deny her request. (§ 425.16, subd. (c)(1).)

## DISPOSITION

The trial court's order is affirmed insofar as it denied the anti-SLAPP motion and is reversed insofar as it denied Allison's request for attorney's fees. On remand, the trial court shall award Allison attorney's fees incurred in opposing the anti-SLAPP motion in the amount that it determines to be reasonable. Allison is entitled to recover costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

| Trial Court: | San Mateo County Superior Court |
|---|---|
| Trial Judge: | Honorable Elizabeth Hill |
| Counsel for Plaintiff and Appellant: | HOPKINS & CARLEY, Allonn E. Levy, Steven A. Ellenberg, Erika J. Gasaway, Arthur E. Rothrock |
| Counsel for Defendants and Appellants: | THE WALSTON LAW GROUP, Gregory S. Walston<br>SHARTSIS FRIESE, John J. Stein |